No appearance for State Bar.

Henry W. Beumler, for Respondent Beumler.

In the Matter of ELMER GRAHAM, a Member of the State Bar.

No appearance for State Bar or Respondent.

McALISTER, J.—Cause No. 4417 is a proceeding commenced by the integrated state bar to discipline two of its members, Elmer Graham, of Phoenix, Maricopa County, and Henry C. Beumler, of Douglas, Cochise County. A special committee was appointed by the board of governors in 1939 to investigate complaints of professional misconduct by them in connection with certain litigation and on November 2, 1940, pursuant to an order to show cause why they should not be disciplined therefor, a hearing was had thereon in Douglas.

The facts giving rise to the matter are substantially these: Some years prior to 1932, one William Carroll Miller, a citizen of the United States, filed with the Special Mexican Claims Commission of the United

States, hereafter referred to as the Commission, claims for property losses suffered by him at the hands of Mexican federal forces. He died on June 15, 1932, leaving surviving his wife, Andrea R. Miller, their son, Frank R. and their daughter, Helen R. Up to that time no decision or award had been made by the Commission, though his claim and proofs of loss had been filed some years before by his attorney, C. V. Manatt, of Douglas. On June 10, 1932, five days before his death, he signed a letter prepared at his request and directed to the Commission at Washington, D. C., stating among other things: ''That no one is to receive payment on this claim but Andrea R. Miller, my legal wife and my heirs Frank R. Miller and Helen R. Miller. I make the foregoing statement as I find myself on my deathbed.'' It was signed by him in the presence of two witnesses who attached their signatures to it in his presence and then forwarded to the Commission.

Due to the fact that the life of the Commission expired in 1931 and a second Commission to complete its unfinished work was not established by Congress until April 10, 1935, nothing was done during this period relative to this claim other than the passing of certain correspondence between Mrs. Miller and the legal adviser of the Commission. But in October, 1935, a communication was received by her from the Commission asking for certain information and, being a person of Mexican extraction and unable to speak or read the English language with facility, she called at the office of respondents, who were partners in the practice of law, and requested that it be translated and explained to her and whatever answer it required prepared. Respondent Beumler, Mrs. Miller testified, told her to come back and he would have the reply ready. She returned the following day, November 12th, and was informed by him that the answer was

ready, but she did not sign it then because there was no one there to translate it for her. She went to the office again the next day and took with her Mike Haro to translate it for her, though the respondent Beumler, she testified, would not permit him to do this but told her to bring her daughter, Helen, for that purpose, and she did so later that day. Helen was then a girl in her late teens and could speak English but said she did not understand parts of the document and so informed Mr. Beumler though he read it to her three times. However, she translated it into Spanish the best she could, and Mrs. Miller signed it, together with two copies, one of which was given her by respondent Graham. It was entitled "Affidavit and Power of Attorney" and read as follows:

"Know all men by these presents:

"Mrs. Andrea R. Miller, being duly sworn deposes and says:

"That she is the widow of the claimant herein. That claimant died June 15, 1932 intestate; and there has been no administration on his estate.

"That affiant is an American Citizen by virtue of her marriage with claimant.

"That there is no further evidence to submit on said claim, other than this instrument.

"That so soon as an award is made on said claim, affiant or some competent person other than affiant, will take out letters of administration to receive said funds.

"That Elmer Graham, an attorney at Law, whose postoffice address is Douglas, Arizona, is hereby constituted and given full power of attorney in fact to act for affiant in all matters appertaining to said claim, and he is hereby given and there is hereby set over to him ½ of the proceeds paid on said claim, as attorney fees. Value received.

"Affiant directs that all future papers and correspondence be directed to her said attorney in fact, in this cause.

"In testimony whereof, affiant affixes her signature at Douglas, Arizona, this November 13, 1935.

                    "Mrs. Andrea R. Miller

"Subscribed and sworn to, before me, the undersigned authority, this November 11th A D 1935.

"Henry Beumler
"Notary Public,
"(Notarial Seal)   Cochise County, Arizona.
"My commission expires 1/13/39"

Mrs. Miller took her copy to another party to be translated into Spanish and after finding out from that translation what it meant had that person prepare for her a letter to the Commission under date of November 17, 1935, in which she advised that body that she had taken its communication of October 17th to the office of Elmer Graham to be translated and answered for her and that, contrary to the statements in the reply prepared by him, Mr. Miller had made a will on his deathbed requesting that no one should receive payments on this claim except his wife, Andrea R. Miller, or his heirs Frank Miller and Helen Miller, that this will or letter was on file with the Commission at Washington, D. C., that she intended to have it (the power of attorney) annulled as she was not giving them any power at all to act in the case, and that she wished the Commission would not answer Graham but write her directly.

Under date of November 26th, thereafter, the Commission acknowledged receipt of this letter and stated that it was sending Elmer Graham a copy of it and inviting his comments thereon. Within a few days Graham wrote the Commission that he had received its letter and also the copy of Mrs. Miller's, that he had carefully noted the contents and that the contract with Mrs. Miller would stand. A little later he made some inquiries of the Commission concerning the Miller claim, and under date of December 28, 1935, the Commission replied that the files of this claim, Docket No. 106, contained a power of attorney executed by Miller in September, 1923, in favor of Henry C. Beumler and C. V. Manatt, of Douglas, and also a statement (the

purported will) signed by Miller on June 10, 1932, a copy of which it enclosed therewith.

Nothing further was done in the matter until May 18, 1937, when the Commission wrote Mrs. Miller that it had made a tentative award but that entry of a final award would have to await the completion of its work. This letter was not delivered but returned and again addressed to her, this time in care of respondent Graham who shortly thereafter prepared, as attorney for Beumler, a petition for letters of administration of the estate of William Carroll Miller and forwarded it from Phoenix, where he was then practicing law, to Beumler at Douglas and it was filed by the latter on July 19, 1937. At the hearing thereon held July 30, 1937, notice of which was given by posting, Beumler and Graham adduced proof that Miller had died intestate but did not file the affidavit and power of attorney, whereupon letters of administration were ordered issued to Beumler upon approval of his bond. The partnership between respondents had been dissolved at that time almost a year.

On February 23, 1938, the Commission made an award of $6150 on the Miller claim and in the same decision found that no services had been performed by Graham and, pursuant to the power conferred upon it by the Act of Congress creating it, denied him any attorney's fee at all. Subsequently, however, the award was reduced to $3505.50 and a payment of $1220.97 made thereon to the administrator, who on September 14, 1938, filed a petition for assignment of the estate to the surviving spouse. At the same time respondents filed the affidavit and power of attorney given Graham by Mrs. Miller, and also an assignment by him dated September 3, 1938, to respondent Beumler of one-half of the fifty per cent paid on the claim to be received by him thereunder. The court granted this petition on September 26th holding that the estate,

less than $2000, together with Mrs. Miller's half of the proceeds of the claim, also less than $2000, was subject to an "assignment in favor of Elmer Graham and H. C. Beumler as collection fees," to the extent of an undivided one-half interest therein to be divided equally between them, set aside the whole of the award, the amount already paid as well as the balance due, to the surviving spouse, Mrs. Miller, and ordered that the $1220.97, less $55 costs, or $1165.97, be distributed to Mrs. Miller, Graham and Beumler in these respective amounts, $582.99, $291.49 and $291.49, and that all future payments be divided in the same proportion subject to administration costs.

Pursuant to this order Beumler paid himself two days later $311.49 and on October 6th had a check for $291.49 ready to mail to Graham and also tendered one for $582.99 to Mrs. Miller, but she refused it stating that there was a will and that she did not know the estate had been probated, and immediately employed W. G. Gilmore who advised Beumler to pay out no more moneys because a petition for probating the will, for revoking the letters of Beumler, and for the issuance of letters of administration with the will annexed to Mrs. Miller would be filed, which was done on November 16, 1938. Upon learning that this action would be taken the administrator did not send the check to Graham and a few days later returned to the estate $291.49 of the $311.49 he had withdrawn, but both by plea in abatement and answer opposed the petition for probating the will and on December 13, 1938, succeeded in having the plea in abatement sustained and an order entered declaring that the purported will was not a will. However, at the same time the court revoked its former order of September 26th directing that $291.49 be distributed to each Beumler and Graham and also set aside that portion of the affidavit and power of attorney executed by Mrs. Miller giving

Graham one-half of the proceeds of the claim as attorney's fee but did allow Beumler $81.05 as administrator's fee and Graham $81.05 as attorney's fees and $210.44 for extraordinary legal services, these sums being then paid by the administrator. Mrs. Miller appealed from the order and this court reversed it holding that the statement by Miller on his deathbed was a will and directed that the order approving the accounts of the administrator be vacated. *In re Estate of Miller*, 54 Ariz. 58, 92 Pac. (2d) 335. Thereafter Beumler repaid the estate the moneys due it including $210.44 paid Graham for extra legal services and $156 costs on appeal, no part of which was returned to him by Graham.

The administrative committee concluded from these facts that the respondents were guilty of professional misconduct upon the following several grounds, and recommended to the board of governors that Beumler be reprimanded and Graham suspended from practice for one year:

1. For procuring the signature of Mrs. Miller to the affidavit and power of attorney giving Graham one-half of the proceeds of the claim, because it was without consideration and unconscionable and exorbitant. This is shown beyond any doubt by the fact that respondents would have received one-half of the $3505.50 finally awarded on the claim of $21,899, for drawing an affidavit and power of attorney giving Graham fifty per cent of the amount to be paid on the claim, instead of complying with Mrs. Miller's request when she went to the office by telling her what the Commission's communication meant and preparing a reply giving it the information sought. Proof of loss had been submitted years before by Manatt and there was nothing further to do, a fact the respondents themselves recognized when they placed in the affidavit and power of attorney the statement that there was no

further evidence to submit on the claims other than that instrument.

2. For failing to notify Mrs. Miller of their intention to apply for letters of administration or advise her of her right as surviving spouse to act as administratrix or nominate someone else to do so. The slightest interest in her welfare would have suggested that this be done and their failure in this respect can lead to but one conclusion and that is, that they were looking out merely for their own interest and did not want her at the hearing for fear she would defeat what they were attempting to do;

3. For resisting in both the Superior and Supreme Courts the application of Mrs. Miller to probate the will of her deceased husband when they had no interests in the estate;

4. For Graham's failure to take cognizance of Mrs. Miller's repudiation of the affidavit and power of attorney and of the existence of the purported will, and for presenting to the court the application for letters and adducing proof of deceased's intestacy at the hearing without apprising the court of the existence of this document. The fact that he may have thought it was not a will certainly did not excuse him from informing the court of its existence and Mrs. Miller's contention concerning it if he was looking after the interests of the estate;

5. For Graham's action in presenting to and procuring from the Superior Court an order assigning to him and Beumler funds based on the affidavit and power of attorney, after the Commission had disallowed him any attorney's fees at all. The decision of the Commission, which the Congressional Act gave it the power to make, rendered the assignment to Graham null and void, and their attempt, notwithstanding this order, to collect through the probate court an attorney's fee of one-half of the award of $3505.50, less

costs of administration, to be divided equally between them, by procuring an assignment of the estate to Mrs. Miller as surviving spouse, to be held along with her community interest in the award, subject to their claim of one-half of the amount to be paid, was not merely unprofessional and unethical but dishonest in a high degree. Had this attempt succeeded respondents would have received at that time one-half of $1220.97, less certain costs, or $582.98, and later on one-half of the balance of $2284.53, less some costs, or approximately $1142.26, a total of around $1700, for preparing an affidavit and power of attorney which could have had no other result than to deprive Mrs. Miller of one-half of the award without rendering any service whatever in return.

The board of governors, without taking new evidence, but upon the record of the administrative committee, certified the matter to this court with the recommendation that both respondents be disbarred, and it occurs to us that it would be unfair to the public to permit members of the bar, guilty of such conduct as this record discloses, to continue as members of the profession.

Cause No. 4416 is a proceeding against Elmer Graham alone, in which the state bar seeks to discipline him for professional misconduct. The administrative committee of district No. 6 of the state bar heard the charges on November 1, 1940, in Phoenix and at the conclusion of the hearing, at which Graham appeared in person and evidence both oral and documentary was admitted in behalf of both parties, held him guilty and recommended disbarment. It certified its record to the board of governors which sent the matter to this court without recommendation, and upon being filed here an order to show cause was issued but Graham's whereabouts was unknown and service upon him by publication became necessary. He has made no appearance in this court.

The record discloses that in an action brought in the Superior Court of Mohave County in 1939 by Jeanne Sarette Levy Berger against T. J. Rodgers to quiet title to certain mining property located in that county, upon which Rodgers then held a lease, Rodgers retained L. C. McNabb of Phoenix to represent him for a fee of $250 upon which he paid $80, the balance of $170 being discharged in April, 1939, by complainant, W. D. Purse, who had aided Rodgers financially in attempting to place the property on a paying basis. The case was lost by Rodgers in the Superior Court and he employed McNabb to appeal it to the Supreme Court, whereupon the complainant Purse put up $500 cash as an appeal bond. After the appeal was started McNabb died and Elmer Graham was substituted by Rodgers to take the case through the appellate court. The fee agreed on for this service was $150 and Rodgers paid all of this except $25. The judgment was affirmed by this court on June 6, 1940, and on July 2nd, thereafter, Graham, without the authority of complainant, withdrew $330.65 of the cash from the Superior Court, the other $169.35 being used to take care of the costs. Upon learning this complainant notified Graham that he had deposited the $500 and demanded that Graham turn over to him the $330.65 received from the clerk of the court. Graham refused to do this claiming that he had rendered legal services to complainant in matters that had arisen between him and Rodgers who were no longer friends.

The administrative committee found that Graham at no time had any claim whatever against complainant for legal services and a reading of the evidence shows clearly that this is true. He had never been employed by complainant for the work he claimed he had partially performed and he does not contend that any fee had been agreed upon or promised. To refuse to return the $330.65 to the admitted owner but instead appropriate it to one's own use does, as the

administrative committee found, constitute professional misconduct and calls for disbarment of the person guilty thereof. In the matter of *In re Russell,* 57 Ariz. 395, 114 Pac. (2d) 241, 244, this language was used: "But even though the company was indebted to him for these two items [attorneys' fees and expenses in connection therewith], it was the opinion of the committee that the diversion of the client's funds in payment of them without a definite agreement that such funds might be so used was reprehensible." Such action is reprehensible to the extent that it calls for disbarment for unethical and unprofessional conduct. One who has no higher appreciation of the relation of attorney and client than this discloses should not be permitted to offer himself to the public as a practicing attorney.

It is the judgment of the court that the respondents should be disbarred from the practice of law in Arizona and such is the order of the court.

ROSS, J., concurred.

LOCKWOOD, C. J., took no part in this decision.